HENRY L. GOODWIN, as Sole Surviving Trustee, etc., of GILBERT S. CODDINGTON, Deceased, Respondent, *v.* ALMA M. GILSEY and Others, Appellants.

First Department, July 2, 1924.

Trusts — action to impress trust on real property — plaintiff and his cotrustee loaned money on real property and took back bond and mortgage — mortgage was subsequently assigned to one of defendants and plaintiff and his cotrustee contributed one-half thereof and received another mortgage and participation in mortgage for balance contributed — participation agreement subordinated plaintiff's rights to those of assignee — mortgage subsequently foreclosed and property sold for less than amount paid by assignee — plaintiff claims that defendants acquired property through fraud — interests of plaintiff were destroyed through legal foreclosure of valid mortgage — plaintiff has merely one-fifth interest in mortgage subordinate to that of assignee — complaint is insufficient.

A complaint in an action by a trustee to impress a trust upon certain real estate is insufficient which alleges that the plaintiff and his cotrustee loaned $50,000 on real property and took back a bond and mortgage; that thereafter the mortgage was assigned to one of the defendants under an agreement whereby the plaintiff and his cotrustee advanced one-half the amount thereof and received in consideration another mortgage for $15,000 and an agreement whereby the plaintiff was to have a one-fifth interest in the mortgage assigned subordinate to that of the assignee and the assignee was to have the right to foreclose the mortgage and receive the proceeds of the sale subject to an accounting as to the plaintiff's interest; that the mortgage was foreclosed and the amount received on the sale was not sufficient to cover the interest of the assignee in the mortgage, and that the purchaser at the foreclosure sale was a dummy corporation owned by the individual defendants.

The complaint is insufficient in that it does not allege any fact impeaching either the validity of the mortgage, the assignment thereof or the foreclosure proceedings, and the mere allegation that the corporation was organized to deprive the plaintiff of his rights under the ownership agreement, assuming it to be a statement of fact, does not aid the complaint, since it is not shown that the organization of the corporation worked an injury to the plaintiff, and since it appears that the corporation derived its title through a valid foreclosure action, the purpose of its organization is immaterial.

The plaintiff shows no right to an accounting under the agreement since he did not have an absolute one-fifth interest in the mortgage, but merely a one-fifth interest subordinate to that of the interest of the assignee.

APPEAL by the defendants, Alma M. Gilsey and others, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 11th day of August, 1923, denying the defendants' motion to dismiss the complaint upon the ground that the facts pleaded are insufficient to constitute a cause of action, and also from an order entered in said clerk's office on the 30th day of October, 1923, granting a reargument of the motion to dismiss the complaint and again denying said motion.

*Miller & Wessel* [*Arthur Ofner* of counsel; *Harry N. Wessel* with him on the brief], for the appellants.

*Charles E. Le Barbier* [*Carroll Sprigg* with him on the brief], for the respondent.

DOWLING, J.:

Respondent claims that primarily and fundamentally this action is one for an accounting, and in effect to impress a trust upon certain real estate in New York city, known as No. 138 West Thirty-second street, and summarizes the allegations of his complaint as follows:

1. The probate of the will of Gilbert S. Coddington, and the issue of letters testamentary to Henry L. and Clifford C. Goodwin.

2. The death of Clifford C. Goodwin, and that Henry L. Goodwin is the sole surviving trustee and acting as such.

3. The two defendant corporations are domestic corporations.

4. The Investors and Traders Realty Company, a domestic corporation, acquired in January, 1907, the premises known as No. 140 West Thirty-second street, in consideration of $50,000, whereof $35,000 was represented by a purchase-money mortgage, and William L. Sutphin and Frederick C. Gilsey, the latter a defendant herein, were respectively its president and secretary.

5. The premises No. 138 West Thirty-second street, adjacent to the foregoing, were, in January, 1907, in consideration of $100 conveyed to the Investors and Traders Realty Company.

6. An agreement in January, 1907, was entered into, whereby it was agreed that, whilst the title to 140 West Thirty-second street was in the Investors and Traders Realty Company, the beneficial interest was in W. L. Sutphin, Frederick C. Gilsey, Frederick J. Davison, Henry L. Goodwin and Mary J. McDonald (Isidor J. Pocher), each a one-fifth interest.

7. On February 4, 1907, the Investors and Traders Realty Company conveyed to H. L. and C. C. Goodwin, as trustees, the two lots 138 and 140 West Thirty-second street, by way of mortgage to secure a loan of $50,000, the obligors on the bond being F. C. Gilsey, W. L. Sutphin, F. J. Davison and I. J. Pocher; the mortgage was a first mortgage on 138 and a second mortgage on 140 West Thirty-second street.

8. On October 7, 1910, H. L. Goodwin and C. C. Goodwin, as trustees, assigned the mortgage to the Windsor Trust Company, in consideration of $50,958.33, whereupon the trust company issued to C. C. Goodwin and H. L. Goodwin, as trustees, its certificate of deposit for $50,000 carrying interest at four per cent per annum.

9. On June 6, 1912, the Windsor Trust Company, in consideration of $50,000, assigned the bond and mortgage to the Mutual Bank, whereupon the bank issued its certificate of deposit to the two Goodwins, as trustees, for the sum of $50,000 with interest at four per cent per annum.

10. On April 30, 1908, the Investors and Traders Realty Company, in consideration of one dollar, conveyed both lots to the Knickerbocker Mortgage and Realty Company, subject to the two mortgages for $35,000 and $50,000; on May 21, 1910, the latter named company conveyed both properties to the Pennlane Realty Company.

11. On March 14, 1910, the Knickerbocker Mortgage and Realty Company conveyed both properties by way of mortgage to Alma M. Gilsey to secure the payment of $15,000 with interest at six per cent, falling due on March 14, 1911; and on April 23, 1913, Alma M. Gilsey assigned the bond and mortgage to the Yonkers National Bank, without recourse.

12. On April 23, 1913, the Mutual Bank in consideration of $50,000 assigned the bond and mortgage for $50,000 to Alma M. Gilsey, on which date the two trustees had in their possession the said certificate of indebtedness of the Mutual Bank for $50,000 carrying interest at four per cent per annum. On the same day the Mutual Bank demanded payment of the amount due upon the bond and mortgage, and the trustees demanded payment, likewise, of the amount due upon the bond and mortgage on April twenty-third.

13. Thereupon the bank made and delivered its check for $49,568.05 to the order of the said trustees, which check was forthwith paid in cash by the bank to the trustees, and out of this money so received by the trustees, they upon the demand

3

and insistence of the bank and Frederick C. Gilsey, acting for himself and his wife, and in pursuance of the scheme and device whereby the wrongs stated in the complaint were to be perpetrated, contributed $26,000 towards the payment to the bank of the amount then due it under the terms of the bond and mortgage, Alma M. Gilsey taking from the bank an assignment of the bond and mortgage, upon payment to it of the balance required to extinguish the amount due to the bank under the terms of the bond and mortgage, all of which was to the prejudice of the beneficiaries under the trust created by the said Coddington.

14. On the same day a so-called " ownership agreement " was entered into between H. L. Goodwin and C. C. Goodwin, as trustees, as parties of the first part and Alma M. Gilsey, as party of the second part, wherein it was *inter alia* agreed that Alma M. Gilsey had an ownership in the bond and mortgage to the extent of $40,000 with interest, and that the trustees were the owners of the balance of the mortgage debt remaining; that Alma M. Gilsey should have the right to foreclose the mortgage and receive the proceeds of sale, and should the same be sold the trustees should have the right to an accounting for all money received by her or any of her assignees; the rights and interest of Alma M. Gilsey and of the trustees agreed to under the terms of this contract were in the proportion of one-fifth to the trustees and four-fifths to Alma M. Gilsey, and by proportionate priority of interest but without priority of either share the one over the other.

15. On March 17, 1915, Alma M. Gilsey, assigned the bond and mortgage to the State and City Realty Company, in consideration of $50,000, she covenanting that there was then due thereon the sum of $50,000, with interest at five per cent per annum from October 23, 1913.

16. On March 29, 1915, the State and City Realty Company began an action for foreclosure of the $50,000 mortgage against the Pennlane Realty Company and others (to which action the trustees were not parties), the action proceeding to judgment and sale; the referee's report shows that there was due the sum of $53,858.75, that the property was sold for $30,000 subject to the prior purchase-money mortgage of $35,000 to the Eastern Holding Company, and after deducting all costs and expenses, the balance of $29,494.66 was paid to the plaintiff State and City Realty Company, whereof one-fifth part, $5,898.93, became due and owing to H. L. Goodwin and his cotrustee pursuant to the terms of the ownership agreement. Frederick C. Gilsey was at that time the president of both the State and City Realty Company as well as of the Eastern Holding Company.

17. After the Eastern Holding Company had acquired title to both premises, it conveyed No. 138 West Thirty-second street by way of mortgage to Elise H. Kinkead to secure the payment of $15,000 with the interest thereon; and, prior to November 2, 1916, the owner of the $35,000 mortgage foreclosed the same and the proceeds of sale were insufficient to pay more than the amount of the mortgage, with interest, thus leaving no balance due to the Pennlane Realty Company, the then owner of the equity of redemption.

18. The title to No. 138 is now, and since October, 1915, has been, vested in the Eastern Holding Company subject to the mortgage of $15,000.

19. The Eastern Holding Company is a " dummy corporation," the real, true and beneficial owners being Alma M. Gilsey and Frederick C. Gilsey. .

20. The acts and doings of Frederick C. Gilsey were not only for his own benefit but for the benefit of his wife Alma M.

21. The defendants have been and now are in the possession of interest and incomes derived from the properties in an amount not known to plaintiff and the defendants have not accounted to the plaintiff for his proportion thereof.

Judgment and relief are asked as follows:

*First.* That the Eastern Holding Company is not the individual owner of 138 West Thirty-second street, but holds it for the joint benefit of plaintiff and the Eastern Holding Company under the terms and provisions of the agreement of April 23, 1913.

*Second.* That the defendants account for all moneys received and paid out by them in connection with the two properties, 138 and 140 West Thirty-second street, including the use of the money received from the making of the mortgage for $15,000 wherein Elise S. Kinkead is the mortgagee.

*Third.* That the plaintiff has an undivided one-fifth interest in 138 West Thirty-second street.

*Fourth.* That a receiver of the rents from 138 West Thirty-second street be appointed *pendente lite.*

*Fifth.* That the defendants be enjoined from incumbering the premises pending the determining of the action.

*Sixth.* That, upon a determination of the accounting, the premises be sold under a decree of this court and the proceeds of sale be divided among the plaintiff and the defendants according to their respective rights; general relief is also asked.

In my opinion this complaint fails to state a cause of action. Not a single fact can be found alleged therein impeaching either the validity of the $50,000 mortgage, of the assignment thereof to

the State and City Realty Company or of the foreclosure proceedings through which the Eastern Holding Company acquired title to the property. The pleading expressly recognizes the validity of these transactions and rests the right to relief thereon. No allegation or suggestion is made in the complaint that the foreclosure proceedings were fraudulent, collusive or affected with other legal infirmity. It necessarily follows from this that the Eastern Holding Company obtained valid title upon the foreclosure and that plaintiff's interest was thereby extinguished.

Assuming the allegation that the Eastern Holding Company was organized to deprive the plaintiff of his rights under the ownership agreement to be a statement of fact, it does not aid the plaintiff. It is not shown that the mere organization of the Eastern Holding Company for this purpose worked an injury to the plaintiff. It is nowhere alleged how or in what respect plaintiff's rights were violated thereby or that any connection existed between this fact and the alleged loss sustained by plaintiff. The Eastern Holding Company derived its title through a valid foreclosure action and the purpose of its organization was, therefore, immaterial. The fact is shown by the complaint that upon the foreclosure sale insufficient was realized to pay even the prior $40,000 interest of the State and City Realty Company. Plaintiff's rights under the ownership agreement were extinguished by a valid foreclosure and the allegations of the complaint are insufficient to establish fraud or collusion in the foreclosure proceedings or any of the transactions prior thereto.

The agreement between Henry L. Goodwin and Clifford C. Goodwin, as trustees under the last will and testament of Gilbert S. Coddington, deceased, parties of the first part, and Alma M. Gilsey, party of the second part, referred to in the complaint, is set forth at length and attached to and made a part thereof. The "fourth" paragraph thereof reads as follows:

"*Fourth.* The party of the second part shall have all the rights of any holder of said bond and mortgage including the right to foreclose the same and to receive the proceeds of sale from the referee, but the parties of the first part shall in any and every event, have the right to an accounting for all money received by the party of the second part or any assignee of the interest of the party of the second part in said bond and mortgage in excess of the ownership of the party of the second part in said bond and mortgage. In case of foreclosure the party of the second part shall be under no obligation to protect the interests of the parties of the first part upon a sale of the mortgaged premises."

The amount of the interest of Alma M. Gilsey in said mortgage,

according to the " first " paragraph of the agreement is $40,000 and interest, and plaintiff's rights are entirely subordinate thereto. There is an allegation in the complaint that Alma M. Gilsey assigned the bond and mortgage in question to the State and City Realty Company, " in consideration of the sum of $50,000," but there is no allegation that she ever received such a sum, nor is she asked to account for the surplus thereof over the $40,000 owing to her therefrom, nor is relief sought against her on such a theory under the paragraph of the agreement just quoted. On the contrary, an adjudication is asked that the Eastern Holding Company is the owner of the premises in question and holds them for its benefit and that of plaintiff jointly. This adopts and ratifies the sale in foreclosure held in the action brought by the State and City Realty Company. But no rights to an accounting can flow from such sale, as the sale realized only $29,494 net, being less than the amount of the interest belonging to Alma M. Gilsey and assigned by her to the realty company in the assignment of the whole mortgage. The proceeds of sale not being sufficient to discharge the $40,000, representing Alma M. Gilsey's interest therein, no right to an accounting existed, either against her or her assignee.

Plaintiff shows no rights to an accounting under the agreement in question. He seems to think that his rights are those of an absolute one-fifth owner of the $50,000 bond and mortgage. He is not, however, such an owner. Under the agreement between the parties, he is only a subordinate owner and his rights as to his $10,000 participation therein are inferior and subordinate to those of Alma M. Gilsey. Under no theory is he entitled to be adjudged the owner of an undivided one-fifth interest in the mortgage or any property represented thereby or taken in satisfaction of it, in whole or in part.

There are no appropriate allegations of fraud on which relief could be based. As has been said, even assuming that the Eastern Holding Company was organized as a " dummy corporation " to deprive plaintiff of his rights (such as they were), there is no fact set forth showing that he was deprived of his rights in an unlawful manner. On the contrary, he lost them by a lawful foreclosure. There is no suggestion of any change in the respective legal rights of the parties as fixed by their agreement by which plaintiff's subordinated rights were so inferior, that Alma M. Gilsey, it was agreed, should be under no obligation to protect plaintiff's rights upon a sale of the mortgaged premises in foreclosure, which is what happened here.

In my opinion, the complaint sets forth no cause of action and the order appealed from should be reversed, with ten dollars costs

and disbursements to appellants, and the motion granted, with ten dollars costs.

· CLARKE, P. J., SMITH, MCAVOY and MARTIN, JJ., concur.

Orders reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.